PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

BALTIMORE GOODWILL INDUSTRIES,
INCORPORATED,
Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD,

No. 96-1632

Respondent,

BALTIMORE REGIONAL JOINT BOARD,
UNION OF NEEDLETRADES, INDUSTRIAL
AND TEXTILE EMPLOYEES, AFL-CIO,
Intervenor.

NATIONAL LABOR RELATIONS BOARD,
Petitioner,

v.

No. 96-1757

BALTIMORE GOODWILL INDUSTRIES,
INCORPORATED,
Respondent.

On Petition for Review and Cross-application
for Enforcement of an Order of the
National Labor Relations Board.
(5-CA-26024)

Argued: June 2, 1997

Decided: January 13, 1998

Before RUSSELL and HAMILTON, Circuit Judges, and
HOWARD, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

Reversed by published opinion. Judge Russell wrote the opinion, in which Judge Hamilton and Judge Howard joined.

_____

**COUNSEL**

**ARGUED:** Patrick John Stewart, VENABLE, BAETJER, HOWARD & CIVILETTI, L.L.P., Washington, D.C., for Petitioner. John Emad Arbab, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent. **ON BRIEF:** John C. Hardwick, Jr., VENABLE, BAETJER, HOWARD & CIVILETTI, L.L.P., Washington, D.C., for Petitioner. Frederick L. Feinstein, General Counsel, Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Peter Winkler, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent.

_____

**OPINION**

PER CURIAM:

The Baltimore Goodwill Industries, Inc. ["Goodwill"] petitions for review of the decision and order of the National Labor Relations Board ["Board"] finding that Goodwill engaged in unfair labor practices in violation § 8(a)(1), (5) of the National Labor Relations Act ["the Act"], 29 U.S.C. § 158(a)(1), (5) (1994), by refusing to bargain with the Board-certified unit. The Board filed a cross-application for enforcement of its order. Goodwill contends that the Board's finding that severely disabled individuals in Goodwill's custodial work services program are "employees" within the meaning of the Act is not supported by substantial evidence in the record and departs from prior Board precedent. Concluding that the Board's findings are not supported by substantial evidence, we grant Goodwill's petition for review, reverse the Board's order, and deny the Board's cross-application for enforcement.

Goodwill is a nonprofit Maryland corporation that administers several charitable programs, including a commercial services program.

Through Goodwill's commercial services program, some participants receive training by working on governmental contracts awarded to Goodwill pursuant to the Javits-Wagner-O'Day Act["JWODA"], 41 U.S.C.A. §§ 46-48c (West 1994 & Supp. 1997). **1** The Union filed a petition seeking to represent a bargaining unit comprised of disabled and non-disabled employees in Goodwill's commercial services program performing custodial work pursuant to a JWODA contract between Goodwill and the Social Security Administration. Goodwill opposed the inclusion of the severely disabled individuals in the bargaining unit on the basis that the disabled employees were not "employees" as defined by the Act. After a representation hearing, the Board issued a decision and direction of election finding that the disabled individuals were "employees" within the meaning of the Act. Goodwill requested a review of the Board's decision, which the Board denied. The Board held an election and because the majority of the employees voted for the Union, the Board certified the Union as the exclusive bargaining representative of the employees.**2** Despite the certification, Goodwill failed to recognize the bargaining unit. The Board found that Goodwill's refusal to bargain violated § 8(a)(1), (5) of the Act. Goodwill petitions this court to review and set aside the Board's order, and the Board cross-petitions for enforcement of its order.

The Board applies a case by case analysis in determining whether individuals are "employees" as defined by the Act. See Davis Mem'l Goodwill Indus. v. NLRB, 108 F.3d 406, 410 (D.C. Cir. 1997) (recog-

_____

**1** For Goodwill to qualify for a contract under the JWODA, seventy-five percent of the workforce performing the contract services must be severely disabled. A severely disabled individual is a person other than a blind person who has a severe physical or mental impairment which so limits the person's functional capabilities that the individual is unable to engage in normal competitive employment over an extended period of time. See 41 U.S.C. § 48b(2).

**2** Specifically, the Board certified "all full-time and regular part-time janitorial and custodian employees, including cleaners, waxers, buffers and strippers employed by the Employer at the Woodlawn Social Security Complex, operations and annex buildings, located in Baltimore, Maryland, but excluding all other employees, guards and supervisors as defined in the Act."

nizing that case by case approach is applied to determination of employee status because "in the rehabilitation setting the employer may . . . safeguard employee interests more effectively than a union") (citing Goodwill Indus. of S. Cal., 231 N.L.R.B. 536, 537-38 (1977)). The Board determines whether the characteristics of a program are typical of industrial settings, indicating that the individuals are "employees" under the Act, or whether the program characteristics are primarily rehabilitative and atypical compared with private industrial settings, indicating that the individuals are not"employees" as defined by the Act.**3** See Davis, 108 F.3d at 410 (quoting Goodwill Indus. of Denver, 304 N.L.R.B. 764, 765 (1991)).

This court accords due deference to the factual findings of the Board, and will uphold the Board's findings if they are supported by substantial evidence in the record as a whole, see Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). The Board in this case found that the working conditions of Goodwill's severely disabled workers at the Woodlawn Social Security Complex ["facility"] were typically industrial and thus that the disabled workers were "employees" under the Act. In making this determination, the Board evaluated the following five aspects of the employment relationship: discipline, competitive placement, productivity standards, counseling, and other terms and conditions of employment. Specifically, the Board found Goodwill disciplined the disabled employees and non-disabled employees within the bargaining unit similarly and that the characteristics of the bargaining unit's workforce reflect long-term employment for employees, without an emphasis on competitive placement. Further, the Board found that Goodwill subjected disabled employees to productivity standards, provided only limited counseling, and offered working conditions similar to those found in private industrial settings.

_____

**3** An employee under the Act is a worker not expressly exempted. See 29 U.S.C. § 152(3) (1994). Although there is no statutory exemption that specifically applies to disabled workers, the Board's case law provides that an individual whose working conditions are"primarily rehabilitative" does not qualify as an "employee" under the Act. See Davis, 108 F.3d at 409 n.3 (citing Goodwill Indus. of Denver, 304 N.L.R.B. 764, 765 (1991)).

4

We find that substantial evidence in the record as a whole does not support the Board's finding that the severely disabled workers in the bargaining unit were "employees" as defined by the Act. See Davis, 108 F.3d at 413. First, in concluding that Goodwill disciplined the disabled employees and non-disabled employees within the bargaining unit similarly, the Board found that Goodwill uses productivity standards to discipline employees, and relied on the testimony of two witnesses who claimed that they were disciplined without counseling. See id. at 411. We determine, however, that substantial evidence in the record establishes that Goodwill disciplined its disabled employees in a rehabilitative manner, different from the way it disciplined its non-disabled employees. See id. The record reflects that Goodwill uses productivity standards to assess the rehabilitative needs of the disabled workers in the program, and when Goodwill transfers a worker to a rehabilitation facility, Goodwill is attempting to meet the employee's rehabilitative needs and is not disciplining the employee. See id. at 411-12. Further, the record reveals that Goodwill contradicted the witnesses' testimony that they were disciplined without counseling with evidence of frequent meetings between the witnesses and the counselors.

Next, the Board concluded that Goodwill operates as a permanent employer because seventy percent of the individuals in the bargaining unit worked at Goodwill for more than two years and that Goodwill does not accord competitive placements to employees. See id. at 410-11. We find that the mere fact that a number of severely disabled employees participate in the program for several years does not negate the program's rehabilitative character. See id. The record reveals that, despite the number of employees who have worked at the facility for two years or more, a significant number of employees work for a short time at the facility and then are placed in the competitive job market, evidencing the rehabilitative nature of the program.

The Board found that the productivity standards applied to disabled employees were characteristic of a typical industrial setting. See id. at 411-12. Specifically, the Board based its conclusion on the fact that Goodwill does not employ disabled employees at the facility until they can perform sixty percent of the work that a non-disabled employee can perform. The Board also relied on evidence that Goodwill transfers disabled employees who cannot reach their production

5

goal and on the fact that there is no trainer at the facility. The record, however, reveals that Goodwill's productivity standards are consistent with a rehabilitative work environment: Goodwill implements an initial minimum productivity standard for entry into the program as a means of measuring the disabled employee's progress toward a competitive work rate; Goodwill transfers and does not discharge employees who fall below the minimum productivity standard; and, while Goodwill does not provide trainers at the facility to teach custodial skills, Goodwill offers training emphasizing other areas, such as time management and interpersonal relations. See id.

Next, the Board concluded that the counseling offered by Goodwill was not evidence of a rehabilitative work setting. The Board based its determination on the fact that the counseling is not mandatory and that the record did not show whether the counseling was a significant part of the disabled employee's work day. We find, however that substantial evidence in the record reveals that the counseling offered by Goodwill is indicative of a rehabilitative work environment. See id. at 412. Goodwill employs two full time counselors who are available at the facility and who spend eighty percent of their time counseling workers and actively monitoring the progress of the disabled individuals.

Last, the Board concluded that Goodwill offers many of the same terms and conditions of employment to disabled and non-disabled workers. For example, the Board found that the disabled workers work a full work week, punch a time clock, are eligible for health insurance, and receive sick leave pay. However, we determine that the Board's finding does not undermine the significant differences in treatment that evidence the rehabilitative aspects of Goodwill's program. See id. at 410.

We conclude that substantial evidence in the record reveals that the characteristics of Goodwill's commercial services program are the same as those that the Board "previously used to declare handicapped workers to be in a primarily rehabilitative relationship" in Goodwill Indus. of Denver, 304 N.L.R.B. 764, 765 (1991), and Goodwill Indus. of Tidewaters, 304 N.L.R.B. 767, 768-69 (1991). Davis, 108 F.3d at 413 (1991) (finding primarily rehabilitative relationship where Goodwill disciplined disabled workers differently, competitively placed

6

disabled workers, set minimum productivity standards, offered coun-
seling and training). We find that the Board did not adequately distin-
guish this case from its precedent, and we decline to remand the case
to the Board for further findings.

In sum, we determine that the Board incorrectly granted summary
judgment based upon its finding that Goodwill's refusal to bargain
with the certified unit constituted an unfair labor practice because
substantial evidence establishes that the severely disabled employees
in the unit were not employees under the Act, and therefore, the
Board erred in certifying the Union as the bargaining unit for the
employees. Accordingly, we grant Goodwill's petition for review,
reverse the Board's order, and deny the Board's cross-petition for
enforcement.

<u>REVERSED</u>

7